**SO ORDERED.**

**SIGNED this 08 day of May, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

**IN RE:**

| | |
|---|---|
| **MERCER'S ENTERPRISES, INC,** | Case No. 08-00651-8-JRL |
| Debtor. | |
| | |
| **SEASCAPE AT WRIGHTSVILLE BEACH, LLC,** | Adversary Proceeding No. |
| Plaintiff | L-08-00011-8-AP |
| vs. | |
| **MERCER'S ENTERPRISES, INC,** | |
| Defendant. | |
| | |
| **MERCER'S ENTERPRISES, INC,** | Adversary Proceeding No. |
| Plaintiff | L-08-00012-8-AP |
| vs. | |
| **SEASCAPE AT WRIGHTSVILLE BEACH, LLC,** | |
| Defendant. | |

_____

**ORDER**

These cases are before the court on the motions of Seascape at Wrightsville Beach, LLC (Seascape) for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), for permissive abstention

1

pursuant to 28 U.S.C. § 1334(c)(1), to remand the adversary proceedings to state court pursuant to Bankruptcy Rule 9027, and for relief from the automatic stay pursuant to 11 U.S.C. § 362 to complete the litigation in state court. On April 22, 2008, the court conducted a hearing on this matter in Wilmington, North Carolina.

## **PROCEDURAL HISTORY**

On November 24, 2004, the debtor, Mercer's Enterprises, Inc. (Mercer's), filed its first Chapter 11 bankruptcy petition with the Bankruptcy Court for the Eastern District of North Carolina. A plan of reorganization was confirmed on September 29, 2005, all creditors were paid in full, and a final decree was entered on December 22, 2005. On May 26, 2006, the debtor moved to reopen the Chapter 11 case for the purpose of clarifying the rights of Mercer's and Seascape under a real estate contract and deed giving rise to the debtor's sale of property to Seascape. The case was reopened on May 31, 2006 and the debtor filed an adversary proceeding against Seascape in the reopened case. In the adversary proceeding, Mercer's asserted three claims for relief, seeking: (1) a declaratory judgment regarding the rights of the parties under a servicing agreement related to the contract and deed between the parties, (2) a declaratory judgment concerning ownership issues and rights in the deed between the parties and the fishing pier relating thereto, and (3) a preliminary and permanent injunction to stop Seascape from alleged interference with Mercer's operations in connection with the first two claims. On August 23, 2006, the bankruptcy court dismissed the adversary proceeding based on lack of subject matter jurisdiction, ruling that Mercer's claims did not "arise under" the bankruptcy code or "arise in" the debtor's bankruptcy case, and were not "related to" a bankruptcy case. Since all creditors had been paid in full under the confirmed plan and a final decree entered, the court could not discern any conceivable impact that resolution of the

dispute would have on the bankruptcy case. After the court dismissed the adversary proceeding, Seascape filed a civil action against Mercer's and Mercer's filed a civil action against Seascape in the New Hanover County Superior Court.

On February 1, 2008, Mercer's filed the current Chapter 11 case and also filed a notice of removal with the bankruptcy court. On February 11, 2008, Mercer's filed a notice of removal with the Clerk of the New Hanover County Superior Court, removing both state court lawsuits to the bankruptcy court. In response, Seascape filed motions with the court for abstention, to remand the adversary proceedings to the state court, and for relief from the automatic stay in order to complete the litigation in state court.

## **FACTUAL BACKGROUND**

The present controversy between Mercer's and Seascape arises out of the June 28, 2005 Order on Private Sale entered by the bankruptcy court during the debtor's first Chapter 11 case. In accordance with that order, the debtor negotiated a contract for the sale of certain properties at Wrightsville Beach to Seascape, while retaining certain assets. One of the assets the debtor intended to retain was a fishing pier commonly known as Johnny Mercer's Fishing Pier. The sale contract was executed on April 18, 2005, subsequently amended with the permission of the court on May 12, 2005, and assigned to Seascape on August 29, 2005. Pursuant to the contract, Mercer's conveyed property to Seascape by general warranty deed, subject to a permanent easement retained by Mercer's to allow continued operation of Johnny Mercer's Fishing Pier and retaining easement rights in the property to assure the right to rebuild the pier in the event of damage. Prior to the August 29, 2005 closing of sale, Mercer's and Seascape attempted to formalize an agreement regarding garbage, grease bins, and parking, but were unable to do so. A dispute remains over the

scope of the permanent easement rights as they relate to garbage, grease bins, and parking, as well as ownership of Johnny Mercer's Fishing Pier. These issues are the subject of the current adversary proceedings.

## **DISCUSSION**

a. Mandatory Abstention

Mandatory abstention prevents a federal court from "hearing a non-core matter which can be timely adjudicated in state court in a previously commenced action." Cox v. Cox (In re Cox), 247 B.R. 556, 569 (Bankr. D. Mass. 2000). Under 28 U.S.C. § 1334(c)(2), a federal court must voluntarily abstain from hearing a proceeding if the following factors are met: (1) a timely motion to abstain is filed, (2) the removed proceeding is based on a state law claim or state law cause of action, (3) the removed proceeding is "related to" a bankruptcy case, but does not "arise under" Title 11 or "arise in" a case under Title 11, (4) the action could not have been commenced in a United States court absent jurisdiction under 28 U.S.C. § 1334, (5) the action was pending when the bankruptcy was filed, and (6) the action can timely be adjudicated in the state forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2). If all of these elements are present, a court must abstain from hearing the matter. However, the bankruptcy court is not required to abstain if the matter is a core proceeding. Cox at 569. Section 157 of Title 28 of the United States Code gives a non-exhaustive list of matters that are deemed "core proceedings" such that a bankruptcy judge may properly hear and determine the case. The definition of "core proceeding" specifically includes matters concerning the administration of the estate, allowance or disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, and other proceedings affecting the liquidation of assets of the estate or the debtor-creditor relationship. 28 U.S.C. §

4

157(b)(2).

In the instant case, Seascape timely filed a motion for abstention, so the first factor in the test for mandatory abstention is met. The second factor is also met because the two lawsuits removed from state court are based solely on state law.[1] The fourth, fifth, and sixth factors are also met because there is no other clear basis for federal jurisdiction over the matters, the actions were pending when the debtor's second bankruptcy case was filed, and the cases are scheduled to be tried in state court in September 2008. Therefore, the primary issue here is whether the third factor for mandatory abstention is met, that the removed proceedings neither "arise under" Title 11 nor "arise in" a case under Title 11. Seascape contends that the claims here are based on contract law, real

---

[1] In Seascape v. Mercer's, the claims for relief are:

(1) For a declaratory judgment to determine the rights, title, and interests of the parties under the Contract and Deed affecting Seascape's real estate, and to quiet title to Seascape's real estate as a result of an "illegally recorded Memorandum of Easement;"
(2) For damages for slander of title on Seascape's real estate by recording a Memorandum of Easement against said real estate;
(3) For trespass against Seascape's real estate; and
(4) For Unfair Trade Practices under Chapter 75 of the North Carolina General Statutes.

In Mercer's v. Seascape, the claims for relief are:

(1) For a declaratory judgment regarding the rights of parties under a Servicing Agreement related to the Contract and Deed between the parties;
(2) For a declaratory judgment concerning ownership issues and rights in the Easement, the Contract, and the Deed between the parties and the fishing pier relating thereto;
(3) To reform the Sale and Purchase Contract and the General Warranty Deed to reflect the true intention of the parties;
(4) For a preliminary and permanent injunction to stop Seascape from alleged interference with Mercer's operations in connection with the first two claims;
(5) For damages for false representations and fraud in connection with the real estate Contract and Deed between the parties; and
(6) To recover damages for Unfair and Deceptive Trade Practices under Chapter 75 of the North Carolina General Statutes.

5

estate law, fraud, and unfair and deceptive trade practice claims under Chapter 75 of the North Carolina General Statutes and therefore the claims do not "arise under" the Bankruptcy Code or "arise in" the bankruptcy case. Mercer's, however, contends that the matters are core proceedings. In support of this argument, Mercer's asserts that the claims necessarily involve the administration of estate property because they involve a determination of the extent of the debtor's ownership rights in the pier, which is the only property in the estate. Mercer's argues that the present case is substantially different from the prior bankruptcy case where the court dismissed the civil proceeding. Unlike in the previous case, Mercer's argues that any interest it has in the pier is now property of the estate and thus any determination as to the extent of Mercer's ownership rights in that property would be a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Second, Mercer's argues that the matters are core proceedings because Seascape alleges claims for damages based on slander of title, trespass, and unfair trade practices, which are claims against the estate that may affect the liquidation of assets or the adjustment of the debtor-creditor relationship.

     Based on the elements of Section 1334(c)(2), the court finds that it not required to abstain from hearing the civil matters. Specifically, the court is in agreement with Mercer's that the matters before it are core proceedings that arise in the bankruptcy case. The causes of action asserted in the adversary proceedings go precisely to what, if anything, comprises the debtor's estate. During the prior case, the claims did not involve property of the estate because, upon confirmation of Mercer's plan of reorganization, any property retained by the estate re-vested in the debtor. However, in this case, Mercer's plan of reorganization has not yet been confirmed. Therefore, any interest that Mercer's is determined to have in the pier constitutes property of the estate. Further, the debtor has asked for a declaratory judgment for the court to determine the proper title to the pier and the

6

appurtenant land, which is everything the debtor purports to own. If it is found that the debtor does not own the pier or the appurtenant land, then there is no bankruptcy case because there is no property to comprise an estate. Thus, the central issue to be decided by the civil proceedings is what property makes up the estate. This court is of the opinion that determining what, if anything, comprises the debtor's estate is central to the administration of the bankruptcy case. 28 U.S.C. § 157(b)(2)(A). Additionally, three of the four counts of Seascape's complaint seek monetary damages from the debtor arising from its prepetition conduct. These are claims in the current case, the allowance or disallowance of which unquestionably falls within this court's core jurisdiction. Id. § 157(b)(2)(B). Mercer's compulsory counterclaims in response are also core. Id. § 157(b)(2)(c). For these reasons, the court is persuaded that the matters before it constitute core proceedings such that mandatory abstention pursuant to Section 1334 would be improper.

b. Permissive Abstention

Seascape also contends that the court should choose to abstain from hearing the adversary proceedings pursuant to 28 U.S.C. § 1334(c)(1). Under that section, a federal court may voluntarily abstain from hearing a proceeding arising under the Bankruptcy Code or related to a case under Title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). The Bankruptcy Court for the Eastern District of North Carolina applies a twelve-factor test when determining whether it should choose to abstain from hearing a proceeding. See H&E Equip. Servs., LLC v. Angell (In re Partitions Plus of Wilmington, Inc.), Case No. 05-00261-8-AP (Bankr. E.D.N.C. Jan. 19, 2006); see also Gen. Wood Preserving Co., Inc. v. Wind Gap Farms (In re Gen. Wood Preserving Co., Inc.), Case No L-02-00146-8-AP (Bankr. E.D.N.C. Dec. 17, 2002). The factors are as follows:

7

>  (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;
>  (2) the extent to which state law issues predominate over bankruptcy issues;
>  (3) the difficulty or unsettled nature of the applicable law;
>  (4) the presence of a related proceeding in state court or other non-bankruptcy court;
>  (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1344;
>  (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>  (7) the substance rather than form of an asserted 'core' proceeding;
>  (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;
>  (9) the burden on the bankruptcy court's docket;
>  (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>  (11) the existence of a right to a jury trial; and
>  (12) the presence in the proceeding of non-debtor parties.

As to the first factor, Seascape contends that the bankruptcy court should abstain because it can do so without any adverse effect on or delay in the administration of the bankruptcy case since the debtor can propose a confirmable plan to pay its debts prior to the final resolution of the lawsuits. Thus, Seascape asserts that the resolution of the bankruptcy case is independent of the resolution of the civil suits involving ownership of Johnny Mercer's Fishing Pier. Moreover, Seascape argues that the administration of the bankruptcy case will not be impeded by remanding the civil matters to state court because of the likely timing of the state court trial. Prior to being removed to the bankruptcy court, the state court cases were scheduled for trial in the New Hanover County Trial Court in September 2008. Thus, Seascape argues that the civil cases can be held as quickly in state court as in the bankruptcy court and therefore the administration of the estate will be unaffected if the bankruptcy court abstains. The debtor, however, contends that determination of the debtor's interest in the pier is essential to the continuation of the debtor's operations and that remanding the issues to the state court would cause delay in the administration of the bankruptcy estate.

As to the second and third factors, the extent to which the state law issues predominate and the difficulty and unsettled nature of the applicable law, Seascape contends that all of the issues are state law, non-bankruptcy claims such that the state court is a more appropriate forum to hear the cases. Seascape concedes that the state law issues are not unsettled, but contends that some of them may be complex. On the other hand, Mercer's argues that the bankruptcy court could expeditiously and economically decide the civil matters because the issues are not complex. Mercer's goes further to argue that the bankruptcy court is actually better equipped to hear the matters than the state court due to its familiarity with the case. In Mercer's prior bankruptcy case, the court entered several orders that enabled Mercer's to sell the real property that is the basis for the current dispute between the parties. The debtor asserts that very little has actually occurred in either case in state court since the complaints were filed, despite the fact that the civil actions have been pending in the state court since 2006. Therefore, the state court has limited exposure to the issues and facts of these cases, whereas the bankruptcy court is familiar with the facts of the cases because the actions originated in the bankruptcy court when the previous adversary proceeding relating to these issues was filed.

The fourth and fifth factors are generally undisputed by the parties as there are no related proceedings between the parties except for the two lawsuits and there does not appear to be a basis for federal jurisdiction other than under 28 U.S.C. § 1334. However, the sixth and seventh factors, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case and the substance rather than form of the core proceeding, are arguable. Mercer's is clearly a party in both civil lawsuits, in addition to being a creditor in the main bankruptcy case. However, Seascape contends that the outcome of the lawsuits is not intertwined with a confirmable Chapter 11 plan because, according to Seascape, the administration of the case and the payment of the creditors in

9

the Chapter 11 would be the same regardless of the outcome of the lawsuits. Seascape also argues that, to the extent the matters are determined to be core proceedings, they are core proceedings in form only, not in substance. On the other hand, the debtor contends that the main bankruptcy case and the civil matters are heavily intertwined, as the fishing pier at issue is the only asset in the bankruptcy case and thus ownership of the pier is essential to the debtor's continued operation.

The eighth and ninth factors relate to the feasibility of severing state law claims from core bankruptcy matters and the burden on the bankruptcy court's docket. Seascape asserts that the state law claims and the bankruptcy are not so intertwined with the underlying bankruptcy case that the matters could not be feasibly severed. Seascape avoids commenting on the burden hearing the matters would place on the bankruptcy court, except to note the recent increase in bankruptcy filings in light of the current economic and credit situation.

Factor ten is the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. Seascape relies heavily on this factor in its argument in favor of permissive abstention. Seascape contends that the track record of the property dispute between Seascape and the debtor suggests forum shopping by Mercer's. Specifically, Mercer's prior Chapter 11 case was closed and all creditors were fully paid. However, Mercer's reopened its prior bankruptcy case in order to litigate the civil matters, but the court dismissed the adversary proceeding as being in the wrong forum. Seascape now contends that Mercer's has filed Chapter 11 for no other purpose than to remove the pending lawsuits from state court, despite the fact that the debtor is solvent and Seascape believes the debts could be paid outside of bankruptcy.

Finally, factors eleven and twelve, regarding the existence of a right to a jury trial and the presence in the proceeding of non-debtor parties, are not disputed by the parties. No party has

requested a jury trial and, although the pleadings are not yet closed in one of the lawsuits, there are currently no other parties to either suit.

Based on the above, the court finds that the factors in this analysis weigh against voluntary abstention. Although the court is wary of the potential for forum shopping, it is clear in this case that the bankruptcy court is the proper forum to hear the disputes because the main bankruptcy case is largely dependent on the outcome of the civil suits, the matters do not present complex or unsettled issues of state law, and hearing the matters in bankruptcy court will promote judicial economy. First, the court believes that determination of the debtor's interest in the pier is essential to the continuation of the debtor's operations because the pier at issue in the civil matters is the only asset of the estate. Chapter 11 is not limited in scope merely to the payment of creditors, but may be utilized by equity holders to clarify the extent of their ownership interest in the estate. Second, despite the fact that the adversary proceedings involves issue of state law, the court's history with this case makes it more familiar with the facts and issues presented than the state court. The deed to the disputed property originated in this court, as the bankruptcy court approved the sale of the property during the debtor's first bankruptcy case. Seascape came to the bankruptcy court to buy the property and relied on the bankruptcy court's broad power pursuant to 11 U.S.C. § 363 to give it clear title. Therefore, it does no great harm to comity or the interest of the state court for the ambiguities and issues left open during the first case to now be resolved by the bankruptcy court. This court is in agreement with courts holding that "[j]udicial economy and efficient administration of the estate are best served when adversary proceedings are litigated in the same venue as the bankruptcy case." Warren Producers, Inc. v. Imperial Gas Res. (In re Warren Producers, Inc.), 360 B.R. 249, 253 (Bankr. W.D. Ky. 2007) (citing In re Windsor Commc'n Group, Inc., 53 B.R. 293,

11

296 (Bankr. E.D. Pa. 1985); In re Vital Link Lodi, Inc., 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999)). As to Seascape's concern that the matters could be more timely adjudicated in state court, the court directs the clerk to set the trial for September 2008 so that the matters will be resolved on approximately the same schedule as would have been followed by the state court. There will be no slippage of that date here.

## CONCLUSION

Based on the foregoing, Seascape's motions for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) and for permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) are DENIED. Accordingly, Seascape's motions to remand the civil proceedings to state court and to lift the automatic stay are also DENIED. The clerk is directed to set the adversary proceedings for trial in September 2008, and to schedule a status conference at the earliest opportunity to determine if the scheduling order entered by the state court remains satisfactory.

**"END OF DOCUMENT"**